IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN KASTEN and JAMES POOLE
individually and on behalf of other
similarly situated individuals,

                    OPINION AND ORDER

                    Plaintiffs,

                                              07-cv-449-bbc[1]

          v.

SAINT-GOBAIN PERFORMANCE
PLASTICS CORPORATION,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

          This is a civil action for monetary relief in which plaintiffs Kevin Kasten and James

Poole, individually and on behalf of others similarly situated, contend that defendant Saint-

Gobain Performance Plastics Corporation violated the Fair Labor Standards Act, Wisconsin

wage statutes and regulations and state common law by not compensating its employees for

all "work" time prior to December 11, 2006. Since this lawsuit began, 156 similarly situated

individuals have opted into the FLSA collective action. Jurisdiction is present. 28 U.S.C.

---

          [1]This case and <u>Kevin Kasten v. Saint-Gobain Performance Plastics Corporation</u>, No.
07-cv-686-bbc (W.D. Wis. filed Dec. 5, 2007) were consolidated on January 29, 2008. On
May 13, 2008, the cases were severed in accordance with a stipulation filed by the parties.

§§ 1331 and 1367.

Currently there are eight motions pending before the court in this case, seven of which will be addressed in this opinion.  Plaintiffs have the following three motions pending: (1) motion for partial summary judgment (dkt. #98); (2) motion for Fed. R. Civ. P. 23 class certification (dkt. #107); and (3) motion to strike Jeffrey Fernandez's expert report (dkt. #168).  Defendant has the following four relevant motions pending: (1) motion to decertify plaintiffs' FLSA collective action (dkt. #113); (2) motion for partial summary judgment (dkt. #101); (3) motion to strike plaintiffs' proposed findings of fact numbers 56 and 65 (dkt. #132); and (4) motion to strike portions of plaintiffs' reply brief (dkt. # 192). (Defendant also filed a motion for summary judgment (dkt. #117) with respect to plaintiff Kasten's individual retaliation claim. This motion was filed in case No. 07-cv-449-bbc, but it addresses plaintiff Kasten's retaliation claim in case No. 07-cv-686-bbc.  Therefore, I will address that motion in a separate opinion.)

In an attempt to address the vast array of motions in an organized fashion, I have split this opinion into three sections and grouped related motions together in each section. The first section will address the three non-dispositive motions, which are plaintiffs' motion to strike and both of defendant's motions to strike.  The second section will address the parties' cross motions for partial summary judgment.  The third section will address plaintiffs' motion for class certification and defendant's motion to decertify the collective

2

action.

Regarding the motions in the first section, I conclude that all the parties' motions to strike will be denied.  Regarding the motions in the second section, I conclude that plaintiffs' motion for partial summary judgment will be granted as it applies to plaintiffs' FLSA and Wisconsin labor law claims for overtime and regular pay for donning, doffing and walking to work stations; it will be denied in all other respects.  Defendant's motion for partial summary judgment will be denied because the offset defense does not apply under the circumstances of this case.  Finally, regarding the motions in the third section, I will deny defendant's motion to decertify plaintiffs' FLSA action because I find that the named plaintiffs and opt-in plaintiffs are similarly situated.  Plaintiffs' motion for class certification of their state law claims will be granted as to their statutory claims and denied as to their common law claims.

## I.  NON-DISPOSITIVE MOTIONS TO STRIKE

### A.  Plaintiffs' Motion to Strike Jeffrey Fernandez's Expert Report

Plaintiffs contend that defendant's expert Jeffrey Fernandez's expert report regarding the time defendant's employees spend donning, doffing and walking should be stricken from the record and that the court should not rely upon the report's conclusions in its summary judgment determinations because the analysis and conclusions in the report are irrelevant

3

and the methodology and calculations are unreliable.  Put more specifically, plaintiffs contend that Fernandez's expert report does not satisfy the requirements regarding the admissibility of an expert report under Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Defendant disputes plaintiffs' criticisms of the report and contends that it is admissible.

> Fed. R. Evid. 702 states:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

It is the duty of a district court to function as a "gatekeeper" regarding expert testimony, which entails determining whether the proposed expert testimony, or the proffered expert report, is both relevant and reliable.  Daubert, 509 U.S. at 589.  The Court of Appeals for the Seventh Circuit follows a three-step analysis in addressing relevance and reliability:

> [1] the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702; [2] the expert's reasoning or methodology underlying the testimony must be scientifically reliable, Daubert, 509 U.S. at 592-93; and [3] the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue.  Fed. R. Evid. 702.

Ervin v. Johnson & Johnson, Inc., 492 F.3d 901, 904 (7th Cir. 2007).  The court of appeals accords the district courts "'wide latitude and discretion when determining whether to admit

4

expert testimony.'" <u>Id.</u> (quoting <u>Wintz By & Through Wintz v. Northrop Corp.</u>, 110 F.3d 508, 512 (7th Cir. 1997)).

Plaintiffs do not challenge Fernandez's expert qualifications and his résumé clearly supports his knowledge of ergonomics, that is, the relation between workers and their environments.  Rather, the core of plaintiffs' argument is that the report is irrelevant because some of the factors used in the report, such as the time period evaluated or the use of a task-based methodology, are legally improper and, therefore, the report's time estimates are inherently incorrect.  Plaintiffs' argument misses the mark.

Fernandez's expert report addresses a central issue in this case:  what amount of time, if any, plaintiffs were working but not compensated by defendant.  His report provides time estimates regarding employee donning, doffing and walking times.  The report could help the finder of fact in determining how much time plaintiffs were working without being compensated.  Plaintiffs' concerns regarding relevance are actually concerns regarding the content of the report.  Such concerns are best addressed through cross examination before the trier of fact.  I find the report relevant.

Plaintiffs's second attack on Fernandez's expert report focuses on the reliability of his method and conclusions.  In addressing this issue, a district court must "ensure that the testimony is sufficiently reliable to qualify for admission."  <u>Mihailovich v. Laatsch</u>, 359 F.3d 892, 918 (7th Cir. 2004) (citing <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999)).

The Supreme Court has provided five non-exhaustive and flexible criteria for guidance in addressing reliability:

> whether the theoretical framework or technique underlying the witness's testimony (1) is subject to verification through testing, (2) whether it has been subject to peer review and publication, (3) what its known or potential rate of error is, (4) whether there are standards controlling its application, and (5) whether it is generally accepted within the relevant expert community.

Id. (citing Daubert, 509 U.S. at 593-94).

Plaintiffs provide eight reasons why Fernandez's expert report is unreliable. Those include a challenge to the size of the samples Fernandez used as being too small to be statistically significant and Fernandez's alleged error in relying on standardized walking times rather than actual walking times. These challenges do not undermine the reliability of the report sufficiently to preclude its use for summary judgment purposes.

In arguing reliability, plaintiffs make the mistake they made when they argued relevance. Their concerns do not address the reliability but the correctness of the report's conclusions, which are concerns best addressed through cross examination. Fernandez used clear standards in creating the time estimates in his report and he verified his conclusions through transparent testing. Plaintiffs do not disagree with the way Fernandez used the standards or the way he implemented his tests; instead, they disagree with the standards themselves and the tests that were created. Essentially, plaintiffs are arguing that Fernandez tailored his evaluation toward defendant's position regarding the time employees spent

6

donning, doffing and walking.  This does not make Fernandez's report unreliable; it merely makes it biased, which, as stated before, is something that goes to the weight to be given his report or testimony and not to its admissibility.  Plaintiffs have failed to prove that Fernandez's expert report is not sufficiently reliable to qualify for admission.  Therefore, their motion to strike will be denied.

### B.  <u>Defendant's Motion to Strike Portions of Plaintiffs' Reply Brief</u>

Defendant requests that portions of plaintiffs' reply brief be stricken because they contain new arguments regarding the reliability and relevance of Fernandez's expert opinions.  Plaintiffs made those new arguments in the hope that Fernandez's expert report would be inadmissible.  Now that I have determined that Fernandez's expert report is admissible as far as it applies to the pending summary judgment motions, plaintiffs' newly raised arguments carry no weight.  Accordingly, defendant's motion to strike portions of plaintiffs' reply brief will be denied.

### C.  <u>Defendant's Motion to Strike Plaintiffs' Proposed Findings of Fact 56 and 65</u>

Defendant asks the court to strike two of plaintiffs' proposed findings of fact that state:

> 56. The range of time the Plaintiffs reported that they spent donning and

doffing pre and post-shift ranged between six and thirty minutes, with an average time of 13.15 to 14.6 minutes.  The range of time the Plaintiffs reported that they spent donning and doffing during their lunches ranged between eight and twenty minutes, with average times of 11.25 to 12.5.  Hourly paid manufacturing and production workers who were scheduled for 30 minute unpaid meal breaks were not given a full 30 minutes of duty-free time because they were donning and doffing gear during a portion of this time.

65.  Mr. Brown likewise stated in an October 15, 2006 e-mail to Valerie Atkins from Defendant's payroll department, "Valerie, can you let us know the cost for three Kronos clocks and how to get them here as soon as possible.  We need to move this project forward to ensure we are compliant with wage and hour law.

Defendant asks that proposed fact number 56 be stricken because the lay witness opinion testimony that supports the finding of fact are merely "guesstimations" or speculation.  It wants proposed fact number 65 stricken because the affidavit supporting the finding of fact has not been properly authenticated.

Plaintiffs' have proffered testimony by lay witnesses regarding the time it took employees to don and doff.  This testimony is "rationally based on the perception of the witness[es]" as required by Fed. R. Evid. 701(a).  Furthermore, the witnesses' opinions are reasonable and "'grounded in observation [and] other first-hand personal experience,'" as opposed to being "'flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'"  Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003) (quoting Visser v. Packer Engineering Assoc., 924 F.2d 655, 659 (7th Cir.1991)).  Although the witnesses' testimony is based on their memories and may be inexact, it is based on

8

personal knowledge.  Defendant's request that proposed fact number 56 be stricken from plaintiffs' proposed findings of fact will be denied.

Defendant is somewhat disingenuous when it asserts that the e-mails that are the basis for plaintiffs' proposed fact number 65 have not been properly authenticated.  First, the e-mails were documents produced by defendant during discovery.  Second, at his March 10, 2008 deposition, Dennis Brown clearly authenticated the e-mail as being sent by him and also authenticated the contents of the e-mail.  (Dkt. #209 at 5-6.)  Accordingly, defendant's request to strike plaintiffs' proposed fact number 65 for failure to authenticate will be denied.

## II.  CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

### A.  Undisputed Facts

The following facts are undisputed and drawn from both parties' proposed findings of fact.

### 1.  The parties

Defendant Saint-Gobain Performance Plastics Corporation is a corporation that manufactures high-performance polymer products for industrial and commercial application. Defendant's principal place of business is in Akron, Ohio and it maintains and operates a

9

manufacturing and production facility in Portage, Wisconsin.

Named plaintiff Kevin Kasten is an adult resident of Wisconsin. He worked for defendant at its Portage, Wisconsin facility from October 2003 until December 2006. He was an hourly manufacturing and production worker who worked both first and third shifts. He worked as a Fabricator, Mill Room Utility and Setup Utility. Named plaintiff James Poole is also an adult resident of Wisconsin. He worked for defendant at its Portage, Wisconsin facility from March 2005 through May 2007. He was an hourly manufacturing and production worker who worked second shift as a Machine Operator and Lead Operator.

Since August 2007, when named plaintiffs Kasten and Poole brought this lawsuit, approximately 156 former and current Saint-Gobain employees who worked or work at defendant's Portage, Wisconsin facility have opted into the lawsuit under the FLSA's collection action opt-in procedures, 28 U.S.C. § 216(b).

2. Working at defendant's manufacturing and production facility in Portage, Wisconsin

   a. The shifts at defendant's Portage facility

Defendant's Portage facility operates continuously seven days a week. To keep the facility in operation, defendant has five shifts: (1) first shift, which begins at 6:30 a.m. and ends at 3:00 p.m., Monday through Friday; (2) second shift, which begins at 2:42 p.m. and ends at 11:12 p.m., Monday through Friday; (3) third shift, which begins at 10:54 p.m. and

ends at 6:54 a.m., Monday through Friday; (4) fourth shift, which begins at 10:45 p.m. and ends at 11:15 a.m. on Friday and Saturday; and (5) fifth shift, which begins at 10:45 a.m. and ends at 11:15 p.m. on Saturday and Sunday.

Employees working first and second shifts receive one 30-minute unpaid meal break and two 10-minute paid rest breaks. Employees working third shift receive one 20-minute paid meal break and two 10-minute paid rest breaks. Employees working fourth and fifth shifts receive one 30-minute unpaid meal break and three 10-minute paid rest breaks. Employees working first, second, fourth or fifth shift receive a paid five minutes at the end of their 30-minute unpaid meal breaks to wash hands and don protective gear before returning to work.

b.  The working areas and required safety gear at defendant's Portage facility

Defendant's Portage facility is split into four manufacturing areas: (1) the platinum clean rooms; (2) the general manufacturing area, which includes millable injection molding, LIM molding, Barwell mill and transfer molding; (3) extrusion; and (4) "other areas," which include the development center, the hydraulics area, the tool room and shipping. The type of protective gear that defendant's employees are required to wear depends on the area of the facility in which they work.

In the platinum clean rooms employees may work as gland coordinators or gland

11

utilities.  Platinum clean rooms workers are required to wear safety shoes, safety glasses, hair covers, beard covers (if the worker has a beard), jump suits, ear plugs and shoe covers, and depending on the work an employee performs on a given day, he or she may also be required to wear gloves and arm guards.  The general manufacturing area includes several positions; among them are fabricator, mill operator and house wear coordinator.   General manufacturing area workers are required to wear safety shoes, safety glasses, hair covers, beard covers (if the worker has a beard), lab coats, and shoe covers and, depending on the work an employee performs on a given day, he or she may also be required to wear ear plugs, gloves, and arm guards.

Employees working in the extrusion area are labeled extruders.  Extruders are required to wear safety shoes, safety glasses, hair covers, beard covers (if the worker has a beard), jump suits, and earplugs and, depending on the work an employee performs on a given day, he or she may also be required to wear gloves.  Employees working in the development center are required to wear safety shoes and safety glasses; if such workers are producing items that are intended for delivery to customers, they are required to wear hair covers, beard covers (if the worker has a beard), lab coats, ear plugs, gloves and arm guards.  Employees working in the tool room and hydraulics area are required to wear safety shoes and safety glasses.

Except prescription safety glasses, all required gear is washed, disposed of or stored onsite to preserve the integrity of the products and the cleanliness of the workplace.

Workers are not permitted to wear their safety shoes outside the facility. Arm guards, fabric smocks and fabric knit gloves remain onsite. Earplugs, hair covers, beard covers, shoe covers and nitrile gloves are disposable items available only onsite and discarded after use.

c. The Kronos system and donning and doffing

All hourly workers, including those hired through temporary employment agencies, are given their own Kronos cards to be used in conjunction with time clock machines so that they can clock-in and clock-out for their shifts and meal breaks. The Kronos system records each worker's work time using the time clock punch times and the shift assigned to each worker. Defendant bases its weekly payroll on each worker's Kronos report.

Workers are trained on donning and doffing procedures and on how to clock-in and out for their shifts. Workers are not required to clock-in or out for their 10-minute rest breaks and it is common for workers to take breaks in excess of 10 minutes. Regarding meal breaks for workers in all shifts but third shift, workers are required to doff their gear, except for safety shoes and glasses, before clocking-out and then don their gear and clock-in before returning to work. If workers choose to leave the building during their meal break they must also doff their safety shoes and glasses before leaving and don them upon returning. The Kronos system automatically deducts one half-hour of time for meal breaks on all shifts, except third shift, regardless of a worker's clock-out and clock-in times. Workers may

13

request supervisor approval for an exception to the automatic deduction if they are performing work during a meal break.

Prior to December 11, 2006, most hourly manufacturing and production workers were required to clock-in after donning some required gear and to clock-out before doffing some required gear.  Employees were not paid for some required donning and doffing because time clocks were located past locker rooms and gowning areas.  Because of the various location of time clocks and the variation in amounts and types of gear necessary for each work area, the amount of uncompensated time spent donning and doffing varies among workers.

### B.  Disputed Facts

The parties dispute the amount of time workers spend donning and doffing protective gear.  According to plaintiffs, before December 11, 2006, workers spent between six and thirty minutes donning and doffing each day, with an average time of 13.15 to 14.6 minutes. They spent between eight and twenty minutes donning and doffing during meal breaks, with an average time of 11.25 to 12.5 minutes.  According to defendant, the median total time workers spent donning and doffing gear each day ranged from 4.117 minutes to 4.755 minutes, depending on the area.

Also, the parties dispute the order that employees do things at the beginning and end

14

of their shifts.  Defendant states that workers in the platinum clean rooms generally follow the same chronological sequence before reaching their work stations and upon leaving their work stations:

> (1) Enter building; (2) put outer clothing in locker; (3) replace street shoes with safety shoes; (4) put on safety glasses; (5) proceed to platinum clean room area; (6) clock-in; (7) proceed to gowning area; (8) wash hands; (9) put on hair covers; (10) put on jump suits; (11) put on shoe covers; (12) put in hearing protection; (13) use hand sanitizer; and (14) proceed into platinum clean room.

> (1) Leave platinum clean room; (2) enter gowning area; (3) take off shoe covers; (4) take off jump suits; (5) take off hair covers; (6) walk out of gowning area; (7) clock-out; (8) walk to locker room and remove safety shoes and glasses; and (9) exit building.

Plaintiffs state that these chronological sequences are not correct because workers may start their day in one area of the facility and end their day in another.  Defendant states that workers in the extrusion area don some gear after clocking in, but plaintiffs contend that extrusion area workers don gear before clocking in.

Defendant states that workers in other areas often followed the same chronological sequence before clocking in and after clocking out:

> (1) Enter building; (2) enter locker room; (3) put on safety shoes and glasses; (4) walk to work area; and (5) punch in.

> (1) Punch out; (2) walk to locker room; (3) take off safety shoes and glasses; (4) exit locker room; and (5) exit building.

Plaintiffs state that workers in other areas may have to don additional gear depending on the

15

work they would be performing that day and that such additional gear would change the chronological sequence.

Defendant's expert, Jeffrey Fernandez, evaluated defendant's Portage facility and reported on the estimated times workers spend donning, doffing and walking.  As part of the evaluation, Fernandez noted how long workers spent on their 10-minute rest breaks. Fernandez concluded that:

> (1) Workers in the general manufacturing area took an average of 3.908 additional minutes for each rest break.

> (2) Workers in the platinum clean rooms took an average of 5.908 additional minutes for each rest break.

> (3) Workers in the extrusion areas took an average of 4.823 additional minutes for each rest break.

> (4) Workers in all three areas took an aggregate of 4.604 additional minutes for each rest break.

Plaintiffs disagree and state that the evaluation is incorrect.


C.  Plaintiffs' Motion for Partial Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Goldstein v. Fidelity & Guaranty Ins. Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242

16

(1986).  The district judge's function in a summary judgment motion "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Additionally, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Id. at 248.  Furthermore, all reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party.  Baron v. City of Highland Park, 195 F.3d 333, 338 (7th Cir. 1999).

However, the nonmoving party cannot simply rest upon the pleadings once the moving party has made a properly supported motion for summary judgment.  Instead the nonmoving party must submit evidence to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Essentially, it becomes the nonmoving party's burden to demonstrate that there is a genuine issue of material fact, that is, that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249.

Plaintiffs request that summary judgment be entered in their favor regarding defendant's liability for all seven causes of action alleged in plaintiffs' complaint.  Plaintiffs arrange the seven causes of action into four categories: (1) plaintiffs and similarly situated employees were not compensated for time they spent donning and doffing personal protective gear, in violation of the FLSA and Wisconsin state labor laws; (2) plaintiffs and

17

similarly situated employees were not compensated for donning and doffing, in breach of an express or implied contract; (3) defendant was unjustly enriched by not compensating plaintiffs for time spent donning and doffing; and (4) plaintiffs and similarly situated employees were denied 30-minute meal periods free from work.  I will address each of plaintiffs' categories in turn.  (Plaintiffs did initially request summary judgment regarding whether defendant's failure to compensate plaintiffs for donning, doffing and walking was willful.  Plaintiffs withdrew that request in their reply brief; accordingly, I will not address the issue.)

1.  Plaintiffs' FLSA and Wisconsin state labor law claims regarding donning, doffing and walking

The purpose behind the FLSA is to make sure that workers can maintain "the minimum standard of living necessary for health, efficiency, and general well-being."  29 U.S.C. § 202(a).  To serve this purpose a core requirement under the FLSA is that "employers must pay their employees a wage for all the 'work' that they do."  Spoerle v. Kraft Foods Global, Inc., 527 F. Supp. 2d 860, 862 (W.D. Wis. 2007) (citing 29 U.S.C. §§ 206 and 207).  Although the FLSA does not define the term "work," a general rule has arisen from the case law "that an employee must be paid for all time spent in physical or mental exertion, whether burdensome or not, controlled and required by the employer, and pursued

18

necessarily and primarily for the benefit of the employer or his business." Sehie v. City of Aurora, 432 F.3d 749, 751 (7th Cir. 2005) (citations and internal quotations omitted). This general rule has been further broadened so that "there need be no exertion at all, and that all hours that the employee is required to give his employer are hours worked, even if they are spent in idleness." Id. (citing Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944)).

An employee who brings an FLSA action for "'unpaid minimum wages or unpaid overtime compensation . . . has the burden to prove that he performed work for which he was not properly compensated.'" Adams v. United States, 471 F.3d 1321, 1326 (Fed. Cir. 2006) (alteration in original) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946), superseded in part by statute, 29 U.S.C. § 254). However, this burden is not intended to be "an impossible hurdle for the employee." Mt. Clemens Pottery Co., 328 U.S. at 687. When an employer's record of employee work time is inaccurate or inadequate, the employees discharge their burden by (1) proving that in fact they performed work for which they were not properly compensated and (2) producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. If the employees satisfy their burden, the burden shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. at 687-88.

Under Wisconsin's labor laws, an employer "shall as often as monthly pay to every

19

employee engaged in the employer's business . . . all wages earned by the employee to a day not more than 31 days prior to the date of payment." Wis. Stat. § 109.03(1). Employees are to be paid for hours worked, which is "all time spent in 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business.'" Wis. Admin. Code DWD § 272.12(1).

Named plaintiffs contend that their work time includes all the time they and all other opt-in plaintiffs spent donning and doffing the protective gear that defendant required them to wear as well as time spent walking to their work areas and that defendant's failure to compensate them for such time, whether at an overtime rate or at a regular rate, violates the FLSA, 29 U.S.C. §§ 206(a) and 207(1), Wis. Stats. § 109.03(1) and Wis. Admin. Code §§ DWD 272.03 and 274.03. Defendant does not deny that plaintiffs' donning, doffing and walking was time spent working, but instead contends that it does not have to compensate plaintiffs for the time because (1) the uncompensated work time is offset by other time for which plaintiffs were compensated despite not working and (2) the uncompensated work time is de minimis.

a. Defendant's offset defense

Defendant contends that any calculation of uncompensated work time for plaintiffs

20

should be offset by any time for which plaintiffs were compensated but were not working. In support of its contention, defendant points to the paid five minutes it provided plaintiffs at the end of their 30-minute unpaid meal breaks and the extra time it alleges plaintiffs generally took in excess of their paid 10-minute breaks as time periods where plaintiffs were paid for time they did not work. Defendant cites <u>Barefield v. Village of Winnetka</u>, 81 F.3d 704 (7th Cir. 1996), as the cornerstone for its offset argument, but the case is inapposite. The circumstances supporting application of the principle in <u>Barefield</u> are different from the circumstances in this case.

In <u>Barefield</u>, 81 F.3d at 710, the Court of Appeals for the Seventh Circuit determined that the meal periods at issue were not compensable work time under the FLSA. The court went on to reason that because the employer compensated its employees for their meal periods although it was not required to do so under the FLSA, the employer could "properly offset the meal break against the compensable roll call time worked by [its employees]." <u>Id.</u> In other words, when an employer pays an employee for time not otherwise compensable under the FLSA, the employer is entitled to an offset for compensation due under the statute.

The reasoning of <u>Barefield</u> is inapplicable in this case because defendant has not compensated plaintiffs for time not otherwise compensable under the FLSA. Plaintiffs use the paid five minutes provided at the end of meal periods to don protective gear and to

21

sanitize as required by defendant, which makes the time compensable work time under the FLSA.  Defendant does not contend otherwise.

Furthermore, the additional minutes taken outside defendant's provided 10-minute rest breaks should be considered compensable work time under the FLSA.  Five to twenty minute rest breaks must be considered hours worked, 29 C.F.R. § 785.18, and "[u]nder the [FLSA] an employee must be compensated for *all* hours worked . . . [which] is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness," 29 C.F.R. § 778.223 (emphasis added).  The principles in the two regulations support the conclusion that the "additional" break time is compensable work time.

Defendant is entitled to take disciplinary measures against employees who take excessively long breaks, but it cannot be permitted to offset such time against uncompensated work time in its attempt to satisfy the requirements placed on it under the FLSA.  "[I]t would undermine the purpose of the FLSA if an employer could use agreed-upon compensation for non-work time (or work time) as a credit so as to avoid paying compensation *required* by the FLSA."  Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 914 (9th Cir. 2004)(emphasis added).

Defendant's offset defense fails as a matter of law.  The undisputed facts establish that defendant has not paid plaintiffs for any time not otherwise compensable under the

22

FLSA.

b.  Defendant's de minimis defense

As plaintiffs correctly point out, "[t]he 'de minimis' exception has no statutory basis and [Anderson v. Mt. Clemens Pottery Co.] is the only case in which the Supreme Court considered the exception's application."  Spoerle, 527 F. Supp. 2d at 868.  Moreover, the case from the Court of Appeals for the Seventh Circuit that addresses the de minimis exception, Frank v. Wilson & Co., 172 F.2d 712 (7th Cir. 1949), does not support defendant's argument.  In Frank, the court does not help flesh out the application of the exception, the court said only that "no rigid rules can be laid down with mathematical certainty as to when the de minimis rule applies."  Frank, 172 F.2d at 716.

The core purpose of the FLSA is to insure that employers pay their  employees for all hours worked.  Spoerle, 527 F. Supp. 2d at 862 (citing 29 U.S.C. §§ 206 and 207); see also 29 C.F.R. § 778.223.  Allowing an employer not to pay an employee merely because the amount of time worked is de minimis conflicts directly with that core purpose.  To trigger the de minimis exception, an employer must show not merely that the time involved is minimal but that it would be difficult to measure the time in light of the realities of the industrial world.  Spoerle, 527 F. Supp. 2d at 869.  In other words, "when providing compensation for a task imposes no additional burden on the employer, there is no

23

justification for denying the employee compensation for that task, regardless how fast the task was performed."  Id.

The parties dispute the amount of uncompensated work time.  However, even accepting defendant's estimate of 4.117 minutes to 4.755 minutes spent donning, doffing and walking, the amount of time does not fall under the de minimis exception.  Defendant does not contend that it would be an administrative burden to record and compensate plaintiffs' donning, doffing and walking times.  In fact, defendant notes that "[w]ith today's technology, one could argue that all time can be recorded to the minute," which could effectively eliminate the de minimis exception.  (Def.'s Br. in Opp'n to Pls.' Mot. for Summ. J., dkt. #157 at 21.)  (This may prove true, especially when one considers that the de minimis exception was created within the context of 1940's technology.)  Instead, defendant contends that it is an "industrial reality" that employees will take advantage of paid, unsupervised time on the clock by stretching out their donning and doffing time or, to use defendant's terminology, will "game the system."  According to defendant, employers cannot be expected to compensate employees for all donning, doffing and walking time without rewarding employees for inefficiency.

Defendant's concern over the "industrial reality" that employees will "game the system" applies equally to any circumstance in which employees use a time clock to keep track of time at work.  The solution is not to violate the FLSA, but to set limitations on the

24

amount of time employees may take to don and doff required protective gear. Because defendant has admitted that it would incur no additional administrative burden in compensating plaintiffs for time spent donning, doffing and walking, its de minimis defense fails as a matter of law.

c.  Disputed facts

Defendant's last effort to defeat plaintiffs' request for summary judgment on their FLSA and Wisconsin labor law claims is its contention that genuine issues of material fact preclude summary judgment.  Defendant points to the parties' dispute regarding the amount of time plaintiffs spent donning, doffing and walking as a genuine issue of material fact that should be decided by a jury.  Defendant is correct that a jury must resolve these factual disputes but that is a decision regarding damages and not liability.

The undisputed facts show that defendant engaged in the practice of not compensating plaintiffs for time spent donning and doffing certain required protective gear and walking to work areas.  There may be variances in the damages due plaintiffs depending on the area in which they worked and the protective gear required for that area, those variances do not change the fact that defendant violated the FLSA and Wisconsin labor law by not compensating plaintiffs for all hours worked.  The undisputed facts establish that defendant's offset and de minimis defenses fail as a matter of law and defendant has not

25

asserted any separate defenses in opposition to plaintiffs' Wisconsin labor law claims. Therefore, plaintiffs have satisfied their burden of proving the absence of genuine issues of material fact regarding defendant's liability for plaintiffs' first three claims in their complaint, that is, plaintiffs' claims that defendant violated the FLSA and Wisconsin labor law by not compensating plaintiffs for all hours worked.

2.  Plaintiffs' breach of contract claim

Plaintiffs' breach of contract claim rests on their contention that plaintiffs and similarly situated employees were not compensated for donning and doffing, in breach of an express or implied contract with defendant. However, plaintiffs proposed no facts to support a finding of any express or implied contract between plaintiffs and defendant. Because genuine issues of material fact remain regarding plaintiffs' breach of contract claim, I will deny summary judgment on it.

3.  Plaintiffs' unjust enrichment and quantum meruit claims.

As with their breach of contract claim, plaintiffs have proposed no facts regarding reasonable compensation or the benefit they provided defendant by donning and doffing that would support their unjust enrichment and quantum meruit claims. A finding that donning and doffing is "work" under the FLSA and Wisconsin labor law does not require a

26

finding that donning and doffing is a benefit to which defendant was not entitled to without having to pay for it.  Because genuine issues of material fact remain regarding plaintiffs' unjust enrichment and quantum meruit claims, I will deny summary judgment on those claims.  (Moreover, it is questionable whether plaintiffs can continue to proceed on their equitable common law claims after having succeeded on their statutory claims.  See, e.g., In re Estate of Ruediger, 83 Wis. 2d 109, 121, 264 N.W.2d 604, 610 (1978) ("Ordinarily, an aggrieved party must resort to a statutory remedy which was designed to redress a particular injury rather than to common law remedies.").  However, defendant did not move for summary judgment on that issue and I will not address it now.)

4.  Plaintiffs' claim for not being paid for "on duty" meal periods

Plaintiffs contend that they were not paid for "on duty" meal periods as required under Wisconsin Administrative Code DWD § 272.04(1)(c) because they were not paid for donning and doffing before and after meal breaks.  According to plaintiffs, such donning and doffing takes between 11.25 minutes and 12.5 minutes.  Defendant disputes plaintiffs' contention, noting it provides plaintiffs with a five-minute "wash up" period after their meal breaks.  Defendant disputes plaintiffs' assertion that it takes 11.25 minutes and 12.5 minutes to don and doff during meal breaks.  On the question whether the five-minute "wash up" period gives plaintiffs enough time to don and doff and still have 30 minutes for

27

a meal period free from work, defendant has raised genuine issues of material fact. Therefore, plaintiffs will not be granted summary judgment on their claim for pay for on duty meal periods.

I conclude that plaintiffs are entitled to summary judgment on their claims that defendant violated the FLSA and Wisconsin labor law when it failed to compensate plaintiffs for time spent donning, doffing and walking to their work areas (plaintiffs' first three claims in their complaint).  I conclude further that plaintiffs are not entitled to summary judgment on their state common law claims and meal period claim (claims four through seven in their complaint).

### D.  Defendant's Motion for Partial Summary Judgment

Defendant requests that the court hold as a matter of law that any work time for which plaintiffs were not compensated be offset against time for which plaintiffs were compensated but were not working.  This is essentially a request that the court rule that defendant's offset defense, addressed in section C.1.a. *supra*, be applied to defeat plaintiffs' claims.  Because I have already determined as a matter of law that the offset defense fails under the circumstances of this case, defendant's motion for partial summary judgment will be denied.

28

III.  DECERTIFICATION OF COLLECTIVE ACTION AND CLASS CERTIFICATION

A.  Defendant's Motion to Decertify Plaintiffs' FLSA Collective Action

On January 17, 2008, Judge Shabaz granted plaintiffs' motion to conditionally certify plaintiffs' FLSA claims as a collective action.  That conditional certification was the firs step in a two-step process regarding FLSA collective actions.  Austin v. Cuna Mutual Insurance Society, 232 F.R.D. 601, 605 (W.D. Wis. 2006).  Defendant's motion to decertify plaintiffs' collective action is the second step, which involves determining whether the individuals who chose to opt in to the FLSA action are "similarly situated."  Id.  Although the statute does not define "similarly situated," I have held previously that the inquiry substantially resembles the typicality inquiry associated with class actions under Fed. R. Civ. P. 23.  Spoerle v. Kraft Foods Global, Inc., No. 07-cv-300-bbc, 2008 WL 2002221, at *5-*7 (W.D. Wis. May 6, 2008).

Defendant contends that named plaintiffs and opt-in plaintiffs are not similarly situated because they have not proved that they were subject to a general policy or practice that violated the FLSA.  This contention appears somewhat disingenuous.  Defendant does not deny that all plaintiffs were not compensated for time spent donning and doffing required protective gear and walking to work areas.  Although the amount of time and gear varies among plaintiffs, the variations do not negate the existence of a practice of not compensating employees for donning, doffing and walking, and challenging such a practice

29

supports a finding that plaintiffs are similarly situated.  Spoerle, 2008 WL 2002221, at *6.

Defendant next directs the court's attention to the variation in work areas and required protective gear at the Portage facility.  Defendant contends that the variations demonstrate that plaintiffs are not similarly situated because they affect the application of its de minimis defense.  As explained earlier, defendant's de minimis defense fails regardless of the variations in time spent donning and doffing because the undisputed facts establish that defendant would not suffer any additional administrative burden in compensating plaintiffs for such time.

Regardless whether plaintiffs work in different areas, on different shifts and don and doff different amounts of required protective gear, they were subject to defendant's general practice of not compensating employees for donning and doffing certain protective gear and walking to work areas, in violation of the FLSA.  Spoerle, 2008 WL 2002221, at *6 (explaining that differences among plaintiffs in pieces of equipment used, distances walked and time spent donning and doffing do not make plaintiffs dissimilar because lawfulness of defendant's policy not contingent on the differences).  As another district court has recently noted, "[i]f one zooms in close enough on anything, differences will abound[.]"  Frank v. Gold'n Plump Poultry, Inc., No. 04-cv-1028(PJS/RLE), 2007 WL 2780504, at *4 (D. Minn. Sept. 24, 2007).

Finally, I am aware that the variations among plaintiffs' donning and doffing times

will affect damages determinations.  Even plaintiffs concede as much.  These variations may require creating sub-groups to address damages in a more efficient manner.  However, those variations do not change my conclusion that plaintiffs are similarly situated in regards to their FLSA claims.  Therefore, defendant's motion to decertify plaintiffs' collective action will be denied.

B.  <u>Plaintiffs' Motion for Fed. R. Civ. P. 23 Class Certification of State Law Claims</u>

Plaintiffs request that the court certify a Rule 23 class regarding all their state law claims, which includes their common law claims.  Typically requests for class certification are made before motions for summary judgment, <u>see, e.g.,</u> <u>Wiesmueller v. Kosobucki</u>, 513 F.3d 784, 787 (7th Cir. 2008), but plaintiffs made their class certification request at the same time as they filed their summary judgment motion.  Accordingly, I will address plaintiffs' request in this opinion.

Before engaging in the Rule 23 analysis, defendant raises the argument that a Rule 23 class action on state labor law claims should not proceed alongside an FLSA collection action because Congress created the FLSA's collective action provision to avoid Rule 23 class actions.  The argument is an interesting one, but ultimately unpersuasive.  The issues are the same for both sets of claims and the validity of the same general practice is being challenged in both sets of claims.  The similarities weigh in favor of addressing the claims together,

31

rather than make plaintiffs bring a separate state law class action.  Although some other courts have decided otherwise, nothing in the statute prohibits a Rule 23 class action from proceeding alongside an FLSA collective action.  See, e.g., Harper v. Yale International Insurance Agency, Inc., No. 03-C-3789, 2004 WL 1080193, at *4 (N.D. Ill. May 12, 2004) (citing different courts that have permitted class action to proceed along with collective action and courts that have not); Musch v. Domtar Industries, Inc., No. 07-cv-524-jcs, (W.D. Wis. Jan. 30, 2008) (Shabaz, J.) (order granting leave to proceed on FLSA collective action together with Rule 23 class certification).  Because of the similarities among the claims in this case, I find it appropriate to permit plaintiffs to pursue in one lawsuit their state labor law claims with a Rule 23 class and their FLSA claim with a collective action.

In addressing plaintiffs' request for class certification, I note at the outset that I am required to conduct a "rigorous analysis" of plaintiffs' request to determine whether the requirements under Rule 23 are satisfied in an effort to "protect[] absent class members whose rights may be affected by the class certification."  Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003).  Under Fed. R. Civ. P. 23, district courts maintain broad discretion in determining whether certification of a class action lawsuit is appropriate.  Keele v. Wexler, 149 F.3d 589, 592 (7th Cir. 1998) (citation omitted).  "[P]lantiff has the burden of proving that a case is appropriately a class action and meets all the requirements of Rule 23."  Valentino v. Howlett, 528 F.2d 975, 978 (7th Cir. 1976) (citation omitted).

32

Before addressing the express requirements under Rule 23, courts have addressed two implicit ones.  Blihovde v. St. Croix, 219 F.R.D. 607, 614 (W.D. Wis. 2003).  First, the proposed class definition must be definite, that is, ascertainable, precise and objective.  Id. (citation omitted); see also Alliance To End Repression v. Rochford, 565 F.2d 975, 977-78 (7th Cir. 1977).  Second, named plaintiffs "must be members of the class they propose to represent."  Bilhovde, at 614. (citation omitted).  The express requirements under Rule 23 begin with the four listed under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Next, the party requesting certification must satisfy one of the requirements under Rule 23(b).  Pertinent to this case is Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  If the party seeking class certification fails to satisfy any requirement under Rule 23, the court should not grant class certification.

1.  Implicit requirements

Plaintiffs' proposed class definition is:

33

> All hourly-paid individuals who performed manufacturing and/or production work at Defendant's Portage, Wisconsin facility during any time between August 14, 2001 and December 11, 2006.

Plaintiffs have provided this single class definition to cover all asserted state statutory and common law claims. However, as plaintiffs have pointed out, their state statutory claims are subject to a two-year statute of limitation whereas their common law claims are subject to a six-year statute of limitation. The different limitations means that some class members could be barred from bringing the statutory claims as a matter of law. Therefore, under Fed. R. Civ. P. 23(c)(5) it would be more appropriate and provide a more precise class definition to create two classes, one for plaintiffs' statutory claims and one for plaintiffs' common law claims.

Moreover, although defendant does not challenge the definiteness of plaintiffs' proposed class, the court has its own duty to conduct its own rigorous analysis to protect absent class members. Plaintiffs' proposed class is imprecise: it encompasses all hourly paid manufacturing or production workers, without specifying whether those employees are involved in donning, doffing and walking, which are limitations on those who could be potential class members. Therefore, to make sure that plaintiffs' classes are not overly broad, the class definition should include additional language relating to pay for donning, doffing and walking.

The definiteness problems can be easily remedied without denying certification. I will

amend plaintiffs' proposed class definition by creating two classes and adding the following language:

> (1) <u>State Statutory Claims Class</u>:  All hourly-paid individuals who performed manufacturing and/or production work at defendant Saint-Gobain's Portage, Wisconsin facility during any time between December 11, 2004 and December 11, 2006 and who were not paid regular or overtime pay for time spent donning and doffing required protective gear and walking to and from their work stations.

> (2) <u>State Common Law Claims Class</u>: All hourly-paid individuals who performed manufacturing and/or production work at defendant Saint-Gobain's Portage, Wisconsin facility during any time between August 15, 2001 and December 11, 2006 and who were not paid for donning and doffing protective gear that defendant required them to wear.

As for the second implicit requirement, plaintiffs Kasten and Poole appear to fall within class membership by having worked during the relevant time periods and not being paid for donning, doffing and walking.   Therefore, plaintiffs have satisfied the two implicit requirements.

I conclude that it would be appropriate to create two classes for plaintiffs' state law claims.  Next, I must analyze each class separately under Rule 23.

2.  <u>State statutory claims class</u>

a.  Express requirements under Rule 23(a)

(1) Numerosity

According to plaintiffs, the state statutory claims class could include up to 700

potential class members if one takes into account the number of hourly-paid maintenance and production employees defendant has employed over the years. Although named plaintiffs fail to provide an exact number, to date 156 other potential class members have opted into the FLSA portion of this case. With the possibility of this many class members, joinder of all members would be impracticable. Accordingly, I find the numerosity requirement satisfied.

### (2) Commonality

Generally, "[a] common nucleus of operative fact[s]" satisfies the commonality requirement under Rule 23(a)(2). <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). Here, the common nucleus of operative facts is that defendant did not compensate its hourly-paid maintenance and production employees for time spent donning, doffing and walking to working stations. The common issue of law is whether defendant's failure to provide such compensation violates Wisconsin labor law. This is sufficient to satisfy the commonality requirement.

### (3) Typicality

The typicality requirement under Rule 23(a)(3) "is closely related to the preceding question of commonality." <u>Rosario</u>, 963 F.2d at 1018. Both the commonality and typicality

36

requirements "ensure that only those plaintiffs . . . who can advance the same factual and legal arguments may be grouped together as a class." <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 341 (7th Cir. 1997). However, under the typicality requirement the focus is on whether the representative plaintiff's claim is based on the same legal theory and arises from the same course of conduct that gives rise to the claims of the other members of the proposed class. <u>Rosario</u>, 963 F.2d at 1018 (citing <u>De La Fuente v. Stokely-Van Camp, Inc.</u>, 713 F.2d 225, 232 (7th Cir. 1983)).

Plaintiffs Kasten and Poole contend that defendant's practice of not paying them for time spent donning, doffing and walking to their work stations violated Wisconsin labor law because such time was time spent working for which they should have been paid. This claim relies on the same legal theory, a violation of Wisconsin labor law, and arises out of the same course of conduct, defendant's general pay practice, as other potential class members' claims. Moreover, the typicality requirement mirrors the similarly situated requirement under the FLSA. The reasons that support a finding that plaintiffs are similarly situated supports a finding of typicality.

### (4) Adequacy of representation

There are two parts in determining the adequacy of representation: (1) "'the adequacy of the named plaintiff's counsel[;]'" and (2) "'the adequacy of representation provided in

37

protecting the different, separate, and distinct interest[s]' of the class members." <u>Retired Chicago Police Association v. Chicago</u>, 7 F.3d 584, 598 (7th Cir. 1993) (quoting <u>Secretary of Labor v. Fitzsimmons</u>, 805 F.2d 682, 697 (7th Cir. 1986)(en banc)). If the class members have "antagonistic or conflicting claims," there is not adequate representation. <u>Rosario</u>, 963 F.2d at 1018 (citation omitted).

Defendant does not point to any antagonistic or conflicting claims among class members. Plaintiffs have suffered the same injury as potential class members, that is, all were uncompensated for donning, doffing and walking to work stations. I find no antagonistic or conflicting claims. In fact, plaintiffs' FLSA claims mirror the state statutory claims in effect, supporting the view that there are no conflicts.

In considering the adequacy of named plaintiffs' lawyers, I look to the factors under Fed. R. Civ. P. 23(g) for guidance. Under those factors, plaintiffs' lawyers are clearly adequate. Plaintiffs' victory on their motion for partial summary judgment demonstrates their lawyers' ability to identify and investigate potential claims as well as their knowledge of the applicable law. Furthermore, both of the firms representing plaintiffs, Nichols, Kaster & Anderson, PLLP and Fox & Fox, S.C., submitted affidavits in which the affiants averred that they specialize in wage and hour class and collective action litigation. Both appear to have the resources to provide representation to the entire class. Therefore, the adequacy of representation requirement is satisfied.

38

b.  Rule 23(b)(3) requirements

Fed. R. Civ. P. 23(b)(3) sets out two additional requirements for class certification, which are often referred to as the predominance and superiority requirements.  Rule 23(b)(3) also provides a non-exhaustive list of four factors to be considered when addressing the predominance and superiority requirements.  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).  A court should consider

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Furthermore, the predominance and superiority requirements are meant "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  Windsor, 521 U.S. at 615 (alteration in original) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note (1966)).

39

(1)  Predominance

Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."  Although similar to the commonality requirement under 23(a)(2), the predominance requirement is more demanding.  Windsor, 521 U.S. at 623-24. Furthermore, the predominance requirement is meant to test "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Id. at 623.

In this case, questions of law and fact common to class members predominate over any questions affecting only individual members.  As mentioned previously, when a class of employees are attacking the validity of an employer policy or practice, "the validity of that policy predominates over individual issues and class certification is appropriate."  Blihovde, 219 F.R.D. at 620 (citations omitted).  Like the FLSA claims, the Wisconsin labor law claims address the validity of defendant's practice of not compensating employees for donning, doffing and walking to work stations.  Because the validity of that practice clearly predominates over any variations in the time spent donning, doffing and walking among class members, plaintiffs have satisfied the predominance requirement.

(2)  Superiority

Defendant contends that addressing plaintiffs' Wisconsin statutory claims as a class

40

action is not the superior method to address the claims because of the likely difficulties in managing such a class action. Once again, defendant points to the differences among class members in time spent donning, doffing and walking as well as variations in gear donned and doffed. However, it is clear that a class action is the superior method for addressing the validity of a practice that affects hundreds of people. Defendant's concerns about variations in damages can be addressed in two ways: (1) later altering or amending the class under Rule 23(c)(1)(C); or (2) having sub-classes created and determining a proper course of proceedings to prevent undue complication in addressing damages, in accordance with Rule 23(c)(5) and (d)(1)(A). Therefore, the superiority requirement is satisfied.

3. <u>State common law claims class</u>

Because plaintiffs' failure to satisfy any requirement under Rule 23 supports denying class certification and the purpose of Rule 23 is to achieve economies of time and effort, I have decided to save time and effort by starting the analysis with the Rule 23 requirement plaintiffs fail to satisfy, which is the Rule 23(b)(3) predominance requirement. This is the point at which defendant's often expressed concern about the variation of facts among class members finds a target at last. Although the validity of defendant's general pay practice predominates over other issues regarding plaintiffs' Wisconsin labor law claims, the same cannot be said for plaintiffs' common law claims. Whether defendant's policy was valid

41

makes no difference to the questions whether class members had an express or implied contract with defendant or whether their donning and doffing time benefited defendant.

Although it is plaintiffs' burden to satisfy all Rule 23 requirements, plaintiffs failed to explain why a breach of one class member's contract will necessarily be a breach of another class member's contract.  Moreover, the common law claims are subject to defenses, such as laches, the determination of which would require an inquiry into each class member's individual circumstances.  Having to address individual issues and defenses to determine the common law claims would not achieve economies of time, effort, and expense or promote uniformity of decision.  Therefore, plaintiffs' request for class certification regarding their state common law claims will be denied for failure to satisfy the predominance requirement under Rule 23(b)(3).

### 3.  Conclusion on class certification

Plaintiffs' motion for class certification of their state law claims will be granted with respect to plaintiffs' Wisconsin statutory labor law claims; it will be denied with respect to plaintiffs' state common law claims.  In accordance with Fed. R. Civ. P. 23(c)(1)(B), the following definitions will govern:

_____(1) Class definition: All hourly-paid individuals who performed manufacturing and/or production work at defendant Saint-Gobain's Portage, Wisconsin facility during any time between December 11, 2004 and December 11, 2006 and who were

not paid regular or overtime pay for time spent donning and doffing required protective gear and walking to and from their work stations.

(2) <u>Class claims</u>: Claims two, three and four in plaintiffs' complaint.

(3) <u>Class counsel</u>: The law firm of Nichols, Kaster & Anderson, PLLP, through its lawyers James Kaster, Jessica Clay, Sarah Fleegel and Adrianna Haugen, and the law firm of Fox & Fox, S.C., through its lawyers Michael Fox and Randall Gold.

Finally, the changes in plaintiffs' class definition as well as the changes in which claims plaintiffs may pursue as a class require plaintiffs to submit a new form of notice for court approval.  The notice should comply with the requirements set out in Fed. R. Civ. P. 23(c)(2)(B).  Plaintiffs will have until noon on June 6, 2008, to submit their proposed notice for court approval.


ORDER

IT IS ORDERED that:

1.  The motion to strike Jeffrey Fernandez's expert report (dkt. #168) filed by plaintiffs Kevin Kasten and James Poole is DENIED.

2.  Defendant Saint-Gobain Performance Plastics Corporations' motion to strike plaintiffs' proposed findings of fact numbers 56 and 65 (dkt. #132) and its motion to strike portions of plaintiffs' reply brief (dkt. #192) are DENIED.

3.  Plaintiffs' motion for partial summary judgment (dkt. #98) is GRANTED in part

43

with respect to the issue of defendant's liability for violating the FLSA and Wisconsin labor law and DENIED in part with respect to the issue of defendant's liability for plaintiffs' common law claims and plaintiffs' claim under Wis. Admin. Code § DWD 272.04(1).

4.  Defendant's motion for partial summary judgment (dkt. #101) is DENIED.

5.  Plaintiffs' motion for class certification (dkt. #107) is GRANTED with respect to their Wisconsin statutory labor law claims, with the amended class definition provided in this opinion; and the motion is DENIED with respect to their common law claims.

6. No later than noon on June 6, 2008 plaintiffs are to submit for court approval their proposed class notice.

7.  Defendant's motion to decertify plaintiffs' FLSA collective action is DENIED.

Entered this 2nd day of June, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

44